UNTIED STATES DISTRICT COURT
FOR THE DISTRCIT OF RHODE ISLAND

UNITED STATES OF AMERICA   )
                                 )
Vs.                             )         CR No. 1-17-CR00099-001
                                 )
FRANCIS SCOTT              )

---

## SENTENCING MEMORANDUM

### I.     REQUEST FOR A 25 YEAR PRISON SENTENCE

Shortly, forty-one year old Francis Scott will appear before this Court to be sentenced in connection with his guilty plea convictions. He has admitted to two counts of Sexual Exploitation of a Minor and one count of Possession of Child Pornography. There is no plea-agreement.  Mr. Scott recognizes that the Court will impose a prison sentence in this case. The issue is: how should the Court go about deciding a fair penalty – one that is punitive but not so punitive that Mr. Scott loses any real chance of turning his life around when he gets out of prison.

### II.     APPLICABLE LEGAL STANDARDS

"When a judge takes the bench with an opinion in hand, the obvious conclusion is that his mind is already made up, that nothing the defendant or his attorney say will make any difference, and that sentencing is just another step in a largely automated, impersonal process." United States v. Wilson, 614 F.3d 219 (6th Cir. 2010). Mr. Scott prays that the Court will not take an automated approach to sentencing in this case. The Court is mandated to make an individualized sentencing decision and to be parsimonious when it comes to sentencing people. See United States v. Rodriguez, 527 F.3d 221, 228 (1st Cir. 2008). District courts must "construct a sentence

that is minimally sufficient to achieve the broad goals of sentencing," to fashion a sentence that is "sufficient but not greater than necessary" to achieve the goals of sentencing, considering (1) the nature and circumstances of the offense, the history and characteristics of the defendant; (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (B) afford adequate deterrence to criminal conduct, (C) protect the public from further crimes of the defendant, and (D) provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory sentencing guidelines range; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

While the Court must consider the recommendations set forth in the Federal Sentencing Guidelines, those Guidelines are merely advisory. United States v. Booker, 543 U.S. 220, 264 65 (2005). They are neither mandatory nor presumptively reasonable. See Nelson v. United States, 555 U.S. 350, 252 (2009) (per curiam). Moreover, the Court can reject any guideline based on sound policy reasons. Kimbrough v. United States, 552 U.S. 85, 111 (2007).

### III.   A 25 Year Prison Sentence is Warranted in Light of The Nature and Circumstances of the Offenses; Mr. Scott's Characteristics;Rehabilitation and Comparative Cases Before this Court.

As Your Honor is well aware, sentencing judges should not presume a guideline sentence will satisfy § 3553(a), because the guidelines are only "a rough approximation of sentences that might achieve § 3553(a)'s objectives." Rita v. United States, 551 U.S. 338, 351 (2007). The Court is free to reject a guideline sentence, "perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different

sentence regardless." <u>Rita</u>, 551 U.S. at 350-351. The sentencing judge has the authority to consider requests for below-guidelines sentences premised on disagreements with the manner in which the sentencing guidelines operate, including policy disagreements with them. United <u>States v. Rodriguez</u>, 527 F.3d 221, 2231 (1st Cir. 2008). For the reasons below, the Court should consider a sentence of 25 years.

### a. Nature and Circumstances of the Offense:

Mr. Scott is very remorseful for his crimes he has committed and the trauma he has caused the two young women in this case.

Though still very alarming, the acts that Mr. Scott committed on 15-year-old A.M. and 17-year-old K.E. in this case did not involve any penetration. When Mr. Scott had initially asked each victim to have sexual intercourse, and each declined, Mr. Scott respected those specific requests. When Mr. Scott asked each victim for oral sex and each declined, again Mr. Scott did not persist in his request for oral sex. Though this may seem like splitting hairs when it comes to the crimes that Mr. Scott ultimately committed, it does exemplify some level of respect that Mr. Scott had for each minor that he can learn to develop into a much healthier baseline in his rehabilitation.

Additionally, at the outset of the police investigation, Mr. Scott fully complied with the authorities. Mr. Scott even volunteered information about cases that the police were not actively investigating. Mr. Scott sat down with police without a lawyer, waived his Miranda rights, and when questioned about the investigation involving A.M., admitted to the sexual conduct with her. Mr. Scott also, without resistance, gave police consent to conduct a forensic search of his cell phone and to conduct a buccal swab for his DNA.

Again, these points may seem trivial juxtaposed to the seriousness of Mr. Scott's crimes. However, I point them out because it should signal to the Court that Mr. Scott has some redeeming qualities in which to build on as he navigates his personal trauma and the trauma he has caused others.

**b.   <u>History and Characteristics of Defendant:</u>**

Mr. Scott is 41 years of age. One of the most notable characteristics of Mr. Scott, as it pertains to sentencing, is that his past criminal history (prior to 2017) does not indicate any previous instances of or propensity for sexual crimes. He has a criminal history category of I. Prior to 2017, he has shown no sexual interest in teenagers whatsoever. Prior to this case, Mr. Scott has never served a jail sentence and the one criminal history point that is reflected on his PSR, did not result in a conviction, but rather a straight probation sentence of 18 months.

Though not an excuse to victimize others, Mr. Scott grew up in a family decimated by the crack cocaine epidemic of the 1980s. His mother and father and both his sisters fell to addiction, resulting in Mr. Scott being raised with very little supervision. That lack of supervision came to a head when Mr. Scott was around 14 or 15 years old. It was then that his friend's mother and caretaker of Mr. Scott at that time, sexually molested him and made him watch pornography with her. It appears that Mr. Scott has lived with that trauma for years and well into his adulthood without any therapy or counseling. As mentioned above, while it is not an excuse to victimize others, I suspect that Mr. Scott's offense conduct in this case was his misguided attempt to regain the power and control that he lost as a child himself, instead of Mr. Scott learning to regulate his emotions via therapy.

Mr. Scott was very close to his mother. He was her youngest of three children.  In many ways she was the leader of his family. Since his incarceration, Mr. Scott's mother passed away due to cancer. Though he was able to see her at the funeral home, he was unable to attend her service due to his incarceration. Mr. Scott is still dealing with the grief of her loss and how his criminal conduct took away his precious last moments and memories with his mother.

As the attached letters of support indicate, Mr. Scott does still have the support of his sisters, who are both still also working through their grief and addiction. (*See* EXHIBIT A, attached).

### c. Provide Just Punishment:

The imposition of a prison sentence contemplates the removal of an individual from society for a period of time as the actual punishment. Additional conditions which make day to day prison life miserable and unsafe, and only serve to dehumanize the person exist outside of the intent of incarceration. The Court should consider the extent of these unintended consequences in order to measure the harshness and severity of its sentence. For example, the severity of incarceration has been particularly acute during the COVID 19 pandemic. Since March of 2020 inmates everywhere have been subject to increased restriction and confinement, separation from family and visitors, and the threat of the virus in a densely populated environment. Those conditions have added to the normal harshness of incarceration. Mr. Scott has experienced the negative aspects of incarcerated life during the pandemic, as he has caught Covid several times since his incarceration.

As a sex offender, Mr. Scott will bear other significant punishments as he serves his sentence. His placement within the BOP will be limited due to his offense. He will be a target for

other inmates because he is a sex offender. He will be classified at a higher security level. He will not be afforded the opportunity to participate in programs which grant extra good time or privileges. will be declared and labeled a sex offender.

Upon his release, Mr. Scott will be required to register with authorities where he lives, works, or attends school – probably for the rest of his life. His housing will always be limited. His employment – if he can find work – will always be limited. His travel will always be limited. He may never be trusted. In many ways, he will be living on the margins of society.

### d.  Provide the Defendant With Educational Training:

Though Mr. Scott cannot undo the harm that he has caused his victims, he understands that the best way he can try to make his victims whole again is to take his rehabilitation seriously and work hard to understand the root of his criminal behavior. (Mr. Scott has begun that journey by completing the Legal Research Methods and Practices course at the ACI, see attached as EXHIBIT B).

As has been pointed out above, and I am sure heard by this Court all too often—this was a case where a victim became the perpetrator.  The cycle repeats itself far more than it should. Mr. Scott, after he was molested around the age of 14, never got the opportunity to process his trauma. He never had any counseling or therapy to learn alternative ways to regulate his emotions.  Because Mr. Scott's criminal record gave no indication of any sexual propensity toward teens, there was no opportunity for a court to impose such a condition of counseling. He will get another chance to address this concern in prison.

What Mr. Scott is specifically asking from this Court, is to hand down a sentence that punishes him for his crimes against K.E. and A.M., but also a sentence that affords him adequate time to address his criminal behavior through counseling and programming, with some meaningful opportunity at release and some meaningful opportunity at regaining the trust of society. We submit that a sentence of 25 years strikes that balance.

### e. The Need to Avoid Unwarranted Sentencing Disparities:

Jordan Monroe was sentenced by this Court to 40 years of incarceration (16-CR-55WES). In that case, Monroe created videos of himself repeatedly raping an unconscious minor over a period of years. There were 19 rapes appearing on the videos, which took place over a period spanning at least 3 years. Additionally, Monroe possessed one of, if not the largest child pornography collection in this District.

In contrast, Mr. Scott did not penetrate his victims A.M. or K.E. He had one sexual encounter with each, and both of his victims have a recollection of Mr. Scott's crime. Lastly, Mr. Scott was in possession of a total of two videos of the same two victims depicting child pornography.

Mr. Scott's conduct is not nearly as severe or remotely comparable to the conduct of Mr. Monroe. As such, this Court should use the Monroe case as a yard stick in calculating an appropriate sentence for Mr. Scott, well below the 40 years that Mr. Monroe received.

## IV.    CONCLUSION

For the reasons stated above, Mr. Scott asks the Court to impose a 25-year term of

imprisonment, and to recommend to the Bureau of Prisons that he be housed as closely as

possible to his family here in Rhode Island.  This sentence is sufficient but not greater than

necessary in light of the factors set forth in 18 U.S.C. § 3553(a).

<div style="margin-left: 40%;">

Respectfully submitted
FRANCIS SCOTT
By his attorney,
/s/ *Noah J. Kilroy*
Noah J. Kilroy, #9238
127 Dorrance St., Floor 4
Providence, RI 02903
noah@kilroylawfirm.com

</div>

## CERTIFICATION

I hereby certify that a copy of this Memorandum was delivered by electronic notification to
Denise Barton, Assistant United States Attorney on March 21, 2023.

/s/ *Noah J. Kilroy*

# Exhibit A

Shawn Marie Smith

193 Webster Street

2 nd Floor

Pawtucket, RI 02861


September 9, 2022


Honorable Judge Smith

Federal Building and Courthouse

One Exchange Terrace

Providence, RI 02903


Honorable Judge Smith,


My name is Shawn Marie Smith and I am writing this letter on behalf of my brother Francis
Scott Jr. I am his oldest sister and a disabled veteran who has always been a part of his life. We
have spoken almost every day since his incarceration visiting him when I can. If I cannot go for a
visit, my sister will go instead. We want him to know that he is loved and supported. We
are a close net family of 3 now since my mother's passing on October 28, 2021.


My brother has never been arrested before. He was a very quiet child while growing up. Very
playful and such a comedian. He would always act silly to help change your mood to a pleasant
one. Always making friends and socializing with others whenever possible. He has a
personality that is soothing when you are going through a situation or need to talk. A listening
ear is always there.


My brother has volunteered at the church cookouts. He is the one that always mans the grill and
is always there to help clean up. Every time the church has a cookout, they would ask for him
personally and he is always willing to help. He reads to his younger nieces and nephews with

such enthusiasm that it captures the children's interest making them more attentive. Also, he worked at the Dunkin Donuts Center in downtown Providence and was well-liked.

While visiting and speaking with my brother during his stay, he always says how he wishes he would have made a different decision and how if he could change it he would. He has been depressed and has gained a lot of weight during his stay. Whenever I speak with him, he always acknowledges his decision as being the wrong choice. I see my brother, who was so full of joy, become withdrawn and resentful. Always wishing he would have made a different decision. He is not a serial rapist as the media portrays him to be. He is a person that made a bad decision and always says he will regret it for the rest of his life.

I appreciate and thank you for your time in reading my character reference.

Sincerely,

Shawn Marie Smith



# FRANCIS SCOTT JR.

Crystal Briggs <cbriggs040368@icloud.com>

Fri 3/3/2023 2:07 PM

To: Noah Kilroy, Esq. <noah@kilroylawfirm.com>

**Caution**: External (cbriggs040368@icloud.com)

First-Time Sender   Details

Report This Email   FAQ   GoDaddy Advanced Email Security, Powered by INKY

YOUR HONOR JUDGE SMITH , I beg for your mercy with my brother Francis Scott  We come from an addictive life , we were  apart of the 80s crack pandemic . I had to admit that I had a problem and I needed help, until then I was hopeless. I had my 5 children in the DCYF system because my mind stayed altered with drugs I didn't give myself a chance, But I had a social worker who believed in me  CHARLES PERRY . HE got me to detox then I went to a recovery house MARATHON HOUSE  . That was in 1993 and I never looked back. I sponsor many woman and have knowledge of NA and AA . My brother Francis Scott seen a lot and went through a lot with active addiction and recovery. He is and amazing man and a fabulous brother. Our mother past in October of 2021 she was our rock and she played a big part in our lives .He has not properly mourned. My brother is one of many that has been locked down for 6 years and most all corrections officers can tell you he brings no trouble , he actually is a roll model. I just wanted to let you that people make mistakes and they can change. So grateful someone believed in me to prove them right . I will help in anyway possible to guide him in the right direction.     Thank you for your time and patience. Crystal Briggs

Sent from my iPhone

# Exhibit B

# RI DEPARTMENT OF CORRECTIONS

## INSTITUTIONAL LIBRARY SERVICES

### Francis D. Scott

HAS COMPLETED THE REQUIREMENTS OF

*Legal Research Methods and Practices*

February 2018

*Linda Talamo, MLS*

Librarian